Mr. Cho? Yes, Your Honor. I'm ready. You may proceed. Thank you, Your Honor. Your Honor, I'm here with Mr. Roger Young from Young & Saucer and Mr. Todd Barrett from my law firm. I've reserved five minutes for rebuttal. May it please the Court. Today, time run, I would like to talk about three topics that are covered in the brief. The first topic is prosecution history estoppel, the second topic is vitiation, and the third topic is the issue of the graft connection element. When one looks at the Claim 8, one is struck by the very last line of that claim, and that last line requires a filament in the trailing end as well as a filament in the leading end, and when one compares that to the accused device, one is struck by the complete absence of that element in the accused device, the retro button. And based on this difference... But of course, the district court found that it was met by equivalence, and indeed a jury made that finding. So we wouldn't expect to find the literal presence of that, we would expect to find an equivalent. That is most definitely the case, and that is why I believe the doctrine of prosecution history estoppel and the doctrine of vitiation serve as a limit to that, to the extent of what equivalence can be found. For if we are to ignore the literal... How does prosecution history estoppel solve your problem? Estoppel solves this problem, Your Honor, because just prior to the issuance of this patent, Smith and Nephew made an amendment, a preliminary amendment, in which it added the very language which is at issue in this case, and that language required both that the filament be in the trailing end, and that there be a hole in the end. And Smith and Nephew surrendered both of those elements during the prosecution by making this amendment. And what is very surprising here, Your Honor, is the other side does not dispute that there was in fact a narrowing amendment with respect to the filament. It does not even argue the Warner-Jenkinson presumption that this was done for a reason relating to patentability. In fact, it does not even argue whether this is a surrender of scope under FESTO. Instead, they would draw this Court's attention to the holes of this device. They would say they did not surrender equivalence with respect to the holes. But the question is whether they surrendered equivalence with respect to the filament in the end. And they did so. They also, I would argue, surrendered equivalence with respect to the holes in the end based on their amendment that they made after the Patent Office rejected claim and view of Estovala, not to mention the fact that they argued the difference of the location of the holes to be at the very end to distinguish over Estovala, which shows an elongated device with holes all along the middle. And so they told the Patent Office, we believe our device is allowable over Estovala because we have holes in the end. But isn't it true their device does exactly the same thing your device does? Your Honor, I would respectfully disagree. Their device requires a filament in the leading end and a filament in the trailing end and a graph connection element, or loop, that carries the graph. Our device, as sold by our client, doesn't need and works by a different arrangement of holes. It does it exactly the same way. It does the same thing. It goes up through the hole that's been bored. It carries the graph, flips over, the button flips over at the top, and it achieves all the same results. Why isn't it the same device? Well, in that regard, I think it's instructive to look at the Court's quote in the Sage case. And in the Sage case, the Court noted that the result was achieved by a different arrangement of parts. And these specific parts that the Arthrex device relies on to flip are completely and utterly without a filament in the trailing end. Well, they purport to have an equivalent of the filament in the sling member acting as the filament, performing a dual role. And we have conceded that you can have equivalents by a single element performing two functions. Isn't your real problem that all the elements are present, but it works in a different way? And wasn't that a factual finding that was made by the jury? No, Your Honor. And you can't really attack that very easily? I disagree, Your Honor. I respectfully disagree. I believe that the doctrine of prosecution history estoppel still applies, irrespective of how the device works. It is an amendment that they chose to make, and that they set forth that that difference alone was a significant difference. But, Counsel, Stavala has, contrary to your assertion, holes in the middle and holes in the ends. Each end has a hole, much the same way as this device. So I find your articulation of their amendment to… they certainly didn't need to, and I'm not sure they did give up holes in either end, the way you've argued in your brief. Your Honor, Stavala, if you concede or understand the end to be the last part lengthwise that you could place a hole suitable for carrying a filament, I would submit, and Smith and Nephew, in fact, argued, when they said, by contrast, our device has holes in the end, that they were making that distinction, that there was, in fact, a distinction between Stavala having holes in the end. Look at Stavala. It's on page 1029 of the appendix. There's a diamond-shaped hole. I think it has number 35 associated with it. There's a hole in the middle, which is near number 17, but I think 17's not pointing directly at the hole. And then a hole on the end, 35 on the other end. Your Honor, based on the construction of hole in the end, I would submit that that's not the end. But more importantly… Wait, if that's not the end, what's the end? The end… I don't see how this is different. Look at your claim and your holes and look at those holes. They're exactly the same distance, it seems to me, from the very edge of the device. Your Honor… And there's also a separate hole in the middle in that one, just like you have separate holes in the middle of yours. So the hole in the end argument, your prosecution history estoppel argument there, I just don't get it. Your Honor, the estoppel is addressed by the fact that they made an amendment to add holes in the end. There's no dispute about that, not to mention the fact they made an argument that there was, in fact, a difference. They said, by contrast, our device has holes in the end. And based on amendment estoppel and argument estoppel, I would submit they surrendered that. But I would hesitate to have the court focus on the hole because that is, in fact, their argument. The question is, there are no filaments at the very end that are used to manipulate or rotate the device. And I would draw the court's attention to the fact that they added that filament. And it's very important to look at figure 10 that was the subject of an interview with the examiner. And in that interview of figure 10 of the 588 patent, there is set forth a device with a filament on the leading end and a filament on the trailing end and a graph connection element in the middle. And now Smith and Nephew would blur the distinction and say the very loop that they called the graph connection element comprising the sling member, which is, by the way, the very same loop of our device, that should serve two purposes. Two functions and meet two limitations. But that is not what they told the patent office. What they told the patent office was that the graph connection element comprising the sling member was one thing. It was added by amendment. And the filament at the trailing end and the filament at the leading end were entirely different matters. Is this a crowded art field? Your Honor, it is, I would submit, a crowded art field. And I would also submit that notably in their own description of the 588 patent, they acknowledged that there were devices out there already, sutured buttons with suture for the very precise procedure. And what distinguished their invention from what they disclosed, the admitted prior art, were these manipulating filaments at the end. And they would have you lose sight of those filaments. We don't have much time left, counsel. You're still, I think, only on argument one of your three points. And you have one minute left before your rebuttal time begins. So why don't you turn to the only one that really interests me of what you propose, which is the graph connection element. Certainly, Your Honor. Maybe I can help you along and see if I understand your argument. Is your argument that the district court erred in failing to grant JMAL because there was no evidence presented that the graph connection element attached to the body, by the portion of the body between the holes. Since they were presenting evidence to the jury that the whole loop is the sling and not the graph connection element, that they failed to present any evidence of graph connection elements performing that. Is that one of your arguments? No, Your Honor. I would restate the argument, if it pleases the court, to say that the claim requires a graph connection element comprising a sling member. And so the graph connection element must include at least a sling member, which the court had construed to be a loop. Their asserted graph connection element comprises only part of that loop. And my understanding of the word comprising, and I think a lot of people see this the same way, is that when you set forth the word comprising, as so commonly seen in so many patent claims, that it must include everything that follows, not just a portion, as they suggest. There are many claims that start out with a device comprising the following elements. And in that regard, their theory is flawed. But isn't your argument, you don't have a dispute with the district court's claim construction. Your argument is that they failed to present evidence under that claim construction that a jury could have found infringement on. That's correct, Your Honor. It's related to this graph connection element, because as I understand it, looking at the picture on page 16 of the blue brief, which is the Arthrex device, as I understand it, your argument is that this whole loop is the graph connection means, or graph connection element, and that they say that that loop is the sling, and that only the bottom thing that looks like those three little fingers on the bottom are the graph connection element. Is that right? Well, they certainly say that that bottom portion of the sling is the graph connection element. That's the part that connects to the graph, right? That is correct. Maybe the graph connection element. Well, I would submit to this court that the very same loop that was in figure 10 of the patent was described as a graph connection element comprising a sling member. In other words, a loop. And now they have dissected that loop into two parts. Well, there's no problem under the doctrine of equivalence with having two elements perform a single function, is there? I would say there are two problems, Your Honor. The first problem is, of course, with respect to vitiation. It is a difference in time. The loop is hung in the middle, the exact middle of this device. How many cases have we said you can have a same element perform two functions under the doctrine of equivalence? I don't know the exact number, Your Honor, but I do recognize that that is, in fact, a case distinction. But I would note that this court, and in particular Your Honor, wrote a decision in Sage, and it was followed in Friedman, and it gave us guidance as to the difference between a question of degree and a question of kind. This is a question of kind because what flips the button, or what rotates the button, and there's no dispute that this button rotates, is the fact that it's compressed through a very tight hole. There's a difference in Sage. Sage gave a specific location of where the parts had to be at any particular time, and that could not be achieved by the accused invention. In this case, we're talking about something performing the two functions, not specific locations that cannot be achieved. So I think you've got a pretty significant problem with citing Sage. Well, in regards to vitiation, let me submit... Vitiation's a significantly problematic doctrine. I recognize that. All it's asking us to do is reform the doctrine of equivalence analysis a second time. But the jury already found it the first time. So we shouldn't be reinventing the jury's finding, should we? No, Your Honor. I'm not asking this Court to do that, but I think with respect to Prosecutionist Restoppel, it is instructive that they added at the very end to have this case allowed the filament in the end requirement. And I would ask this Court to address that or focus on that. And I recognize I'm also running into my... Okay, well, we'll save the rest of your time, Mr. Cho. Thank you, Your Honor. Mr. Matuszek. Thank you, Your Honor. You may proceed. Good afternoon. My name is Mark Matuszek. I represent the plaintiffs Smith and Nephew, Incorporated, with me, or James Dowd and Jacob Oilo from my office. And this case, to address, Your Honor, your question, is about an invention that was not... I don't think this is a chronic field. This was an invention in the field of orthopedic medicine that the defendant's own expert called a, quote, very significant advance. It completely eliminated the need to have a second major incision in ACL surgery in the thigh. And that's one of the most common surgeries affecting thousands of people every year. I understand the part that's called the graft. Yes, Your Honor. Which is brought up through this graft-carrying loop device. Do you end up taking the button? Maybe this is a medical question you don't know about, but perhaps you do. Do you end up taking that button, whosoever button it is, out once the graft is pulled through? No, that button stays inside the patient's body. It goes through the bone tunnel, and it's flipped after it comes out, and that's what holds the graft in place until the bone grows around it. So that button, it's very small, it's only about this big, stays in the patient's body. So the graft actually is just held in place until the bone grows around it. Correct, Your Honor. What is the graft made of? The graft, it's usually some form of tendon, hamstring tendon. It used to be made of patellar tendon. This invention allowed the use of hamstring tendon, which is a little bit easier to work with. Thank you. At trials on appeal, there were two key substantive issues. Whether Smith and Nephew established two limitations of claim aid of this patent were met under the Doctrine of Equivalence. One, whether the hole locations in the retro button are equivalent to the hole locations required by claim aid. And two, whether the loop in the trailing hole of the retro button can satisfy more than one limitation under claim aid, under the Doctrine of Equivalence. Can you start with the graft connection element aspect of it for me? Sure. So with respect to the graft. . . I mean, didn't you originally argue to the district court that the entire loop was the graft connection element? As part of claim construction, Your Honor? That's correct. You argued the whole loop, but not just as part of claim construction, with regard to the Arthrex device, that the whole loop, you argued, was the graft connection element. No, Your Honor. Once the court had issued its claim construction, it. . . So prior to claim construction, your position was that the whole loop in the infringing device was the graft connection element. That's correct, except I would point out that whether the loop is called the graft connection element and the portion that carries is the sling member or vice versa. But I think that vice versa is really important because the claim says a graft connection element comprising a sling member. So it seems a little bit tough to me to say the sling member can have the graft connection element when the claim says the graft connection element has to contain the sling member. Well, I think there are two answers to that question. The first is the claim language does not stop after a sling member. It says a graft connection element comprising a sling member, and then it goes on to say having a width sufficient to carry the graft during and after implementation. So we know that the bottom portion of the Arthrex device, which is that little three-fingered-looking thing, the sling-looking thing, we know that that has to hold. If it's going to be part of the graft connection element, it has to carry the graft during implantation. And, in fact, it does, right? That's the portion of the Arthrex device that does carry it. Well, that's why we say that it is the graft connection element because that's the only part of that loop that has the width sufficient to carry the graft. What is it that has to carry the graft? Is it the graft connection element or the sling member, according to the claim limitation? Well, a graft connection member comprising a sling member having a width sufficient to carry the graft, right? So isn't it the graft connection element has to have a sling member in it and the sling member has to be able to carry the graft? We say the graft connection element has to comprise at least a portion of the sling member, and we think that's consistent with the specification in the claim language, which says that the graft connection element has to have a width sufficient to carry the graft during and after implantation. The whole loop doesn't have that. The whole loop doesn't have what? The whole loop is not of sufficient width to carry the graft during and after implementation. Yeah, but that can't be the answer because the only embodiment disclosed, and it's repeatedly disclosed in the specification, has the entire loop being the graft connection element and also the sling. It says so expressly in the patent. So it can't be the case that because the whole loop does not all contain or hold the graft connection element, it isn't part of the graft connection element. In fact, the disclosure says the opposite. That would be a very good literal infringement argument. How does the equivalence affect all of this? The equivalence, Your Honor, doesn't really. The equivalence has to do with what's in the material. Well, in fact, you couldn't argue equivalence on this, right? The district court said you were not allowed to argue equivalence on this, right? Isn't this the point upon which they said you couldn't argue equivalence? Because you hadn't presented particularized testimony of it in advance. That's correct, Your Honor. So this is only a literal infringement issue. It is only a literal infringement issue, yes. And we argued a trial, and the jury concluded that literal infringement was met because the graft connection element, as the court defined it below, was met by, in the figure that's shown on page 44 of our brief, was met by the portion of the sling member that was sufficient to carry the graft during implementation. I would point out one other thing, that if you take Arthur Exler's argument, it would still infringe under undisputed evidence. And so this argument is really academic. Under their construction, and they say this at page 20 of their reply, the sling member serves as the graft connection device. So it's all one thing. Sling member, graft connection device are coextensive. And if you look again at the patent, at figure 14 of the patent, you just see one loop. If Arthur Exler's retrobutton has that structure, there's no dispute about that. That's why Arthur Exler never argued this theory about comprising to the jury. It never came up at trial. Because inescapably, if they did, we would simply point to it and say, regardless of how you characterize this, they still infringe the patent. And I think that's the reason why that issue was never presented to the jury for consideration. Mr. Trustee, let me ask your help in understanding the case that you're defending. As I understand it, everybody agrees no literal infringement. No literal infringement as to two elements, Your Honor. The rest of the claim was literally infringed. In other words, there are a number of elements. Most of those elements were met literally. No literal infringement in terms of Claim 8, right? That's correct, Your Honor. So the question then is, does their accused device come within the scope of something we call the Doctrine of Equivalence? That's where we're going. My problem is that I read Claim 8, and I look at the drawings, and I read the written description, and I come away with a sense that this is a relatively simple mechanical device, clearly described in considerable detail as to exactly what it is you invented and what it is you're claiming. And what it is you're claiming is a device, in addition to the sling member discussion we've just been having, that has ends, a leading end, a trailing end, each end having a hole. I think that having a hole is a fairly significant part of your invention. And through those holes, you thread a filament through each end, and then you pull those two filaments up, and that's what you use to flip the button with. Pretty clearly defined. But that's not what the accused device looks like, and in fact, doesn't quite do. Now, here's my question to you. If their accused device comes within something we call the Doctrine of Equivalence, what is the limiting principle that separates your case from every other possible case that could come before us, in which someone says, I invented a widget, this accused device is a snafu, but it could look like mine if it was different. That is, I can't find a limiting principle which helps you, but doesn't open the door so widely, I have no idea where we are. Help me with that. All right, Your Honor. I would start with the premise that we don't agree that it works differently, because just simply by pulling on that loop, Arthrex achieves the same result, and does it in the same way as you do it in the patent, with respect to having a second suture. The limiting factor here is that if you start from the premise that a single structure can perform two distinct functions, to meet two claim elements, here that single structure performs two distinct functions at two distinct points in time. It holds the graft. So you're talking about the loop now? Yes. I'm not talking about the loop, I'm talking about the invention. You invented a button that requires two ends with holes in them, with filaments that then get threaded. That isn't what they do. My question to you is, if this can go to the jury on a question called doctrine of equivalence, is there anything that can't? And if it can't, what is the limiting principle that keeps other things from going to the jury every time there is an infringement suit? Doctrine of equivalence is not a second way of getting a judgment. I understand that, Your Honor. I think that I would say their device does have holes, there's no question about that. Their device does have filament in the holes, there's no question about that. The issue is, are the holes in the leading and trailing ends? The answer is clearly no. Well, but contrary, yeah, that's true. But Dr. Sebastionelli spent a lot of time in front of the jury telling the jury why it doesn't matter. And the crux of this invention, if you think about the idea of how it works, is that you're pulling this through the hole and it's got to rotate.  That's the key aspect of the invention. That's what makes it work. If you put two holes in one end, it wouldn't work that way. If you only had one hole, it wouldn't work that way. You rotate yours by pulling on the filaments that have come up the top. Well, you pull it through and you rotate it and seat it by pulling back on the filaments in both cases. The judge below described construed filament as thread-like material. In our case, in the disclosed embodiment, that's true. There is a second suture that goes through a hole, a filament that goes through a hole. In the Arthrex case, it's the loop, which is made of filament, no dispute about that, that's pulled back to accomplish the same result. So the principle of the invention is exactly the same. I think that's the key fact. There's no change in principle. All they did was take out the second suture. They still operate the same way. Their own documents talk about, their instructions to doctors talk about how you have to pull back on the loop in order to have this thing seat in its final fixation position on the patient's bone and hold the graft in place. So I think, I would say that they do, that's the limiting principle, that's the limiting idea, is the principle of the invention here is exactly the same in both devices. Now, with respect to, and I would like to go back to the point on comprising, which is that, in this case, there has to be a portion of the, the graft connection element has to have a width sufficient to carry the graft during and after implementation. And that's important because if it's too thin, it's going to cut through the graft as it's being pulled through the bone. That's what the judge said. Width sufficient to carry the graft during and after implementation means that it supports and carries the graft without breaking or tearing the graft. That's the portion that's at the bottom of this device. Now, you know, and I can see this, as Judge Moore had suggested, that in claim construction we had a different position. But parties often have different positions in claim construction. The judge's job is to tell us what the claims need, and then we look at it from the perspective of do we have that or not. And in this, and based, as set forth on page 44, we do have literally the graft connection element set forth, which is. So one more quick question. Is my finger attached to my hand? Yes, Your Honor. Is my finger attached to my toe? No, it's not attached to your toe, Your Honor. Okay. So your claim says on claim 8 that the hole in said trailing end being configured for attaching body to the graft connection element. So you're saying the thing that attaches the body in the anthrax device to the graft connection element is the sling. Well, that's exactly like saying my finger is connected to my toe. You're saying the body is connected to the graft connection element through the sling. But the claim says the graft connection element has to be connected to the body. The graft connection is connected to the body, and there are embodiments where. In the anthrax device, as you have defined it and argued to the jury, the only thing that constitutes the graft connection element are those three little things at the bottom that hold it. You say the ropes that go through the holes are not part of the graft connection element, correct? That's correct, Your Honor. Because if they are, the claim wouldn't be infringed because those holes can't have the graft connection element. That's correct, Your Honor. Well, so the claim says graft connection element has to be connected to the body. It is connected to the body through the sling member. By the sling member. But you just agreed my finger isn't connected to my toe, despite the fact that they're all connected through something. But the graft connection element and the sling member are a loop. They're not like your finger and your toe. They're one structure, so the graft connection element… Well, how many structures do you think this is? This is just one structure. Well, I would say it's a different structure, Your Honor. I see my time is up. Thank you, Mr. Matuszek. Mr. Cho, you have about a minute and a half left. Thank you, Your Honor. I would just draw this Court's attention to the preliminary amendment, which I think suggests to me two things. Actually, three things. The first thing it tells me, it tells me that there was an amendment to the location of where the filament could be. It could have been anywhere along the body, but they specified the filament in the trailing end to be in the trailing end, and that was the benefit of the bargain that they made with the Patent Office to get the claim allowed. For that reason, prosecution history estoppel is supported. With respect to vitiation, and I recognize that that may be a disfavored argument at this point, but I think the point is they emphasize in that preliminary amendment it was a substantial difference to the Patent Office, and that is a substantial difference in kind. And with respect to the graft connection element comprising the sling member, I would simply submit that because they don't have a filament, we don't have a filament in the trailing end, they had to dissect and dissect the loop into many different parts, and as a consequence of that, sacrifice the meaning of other claim terms, whether it was the meaning of the filament in the trailing end, whether it was the meaning of the graft connection element comprising the sling member, all that had to be sacrificed to advance this theory. This theory should never have advanced to the jury. I submit that this court should have granted judgment as a matter of law on this point.